IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>HUGO SÁNCHEZ-RAMOS [1],<br><br>**Defendant**. | **Criminal No.** 96-001 (FAB) |

MEMORANDUM AND ORDER

BESOSA, Senior District Judge.

Defendant Hugo Sánchez-Ramos ("Sánchez") moves the Court for early termination of his term of supervised release pursuant to 18 U.S.C. § 3583(e)(1). (Docket No. 737.) For the following reasons, his motion for early termination of supervised release is **DENIED**.

In 1995, Sánchez and a group of accomplices staged an armed robbery of a Banco Popular branch in the Plaza Carolina shopping mall. (Docket No. 749 at pp. 3-5.) One bank security guard was killed in the robbery, another was injured, and six civilian bystanders were injured. Id. at pp. 5-8. Sánchez was convicted of one count of armed bank robbery resulting in death, in violation of 18 U.S.C. § 2113(a) (count one), and one count of knowingly carrying and using firearms during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(3) and (2) (count two). (Docket No. 440 at p. 1.) He was sentenced to a total of

360 months' imprisonment, to be followed by five years of supervised release. Id. at p. 2. He commenced his term of supervised release in the Middle District of Florida on November 19, 2021. (Docket No. 742 at p. 1.)

Sánchez has since obtained his commercial driver's license, which allows him to drive large commercial trucks. See Docket No. 737 at p. 1. He now runs a trucking company with his wife, Maria M. Bastian. Id. He has received a security clearance for, and frequently delivers cargo to, U.S. military bases, ports, and government facilities. Id. To deliver cargo to U.S. ports, however, Sánchez must be escorted by an individual with a Transportation Worker Identification Credential, or TWIC. Id. Each entry costs him between $80 and $150. Id. Applying for his own TWIC card would cost $125, and Sánchez requests early termination of his supervised release term to allow him to apply for one. Id. He also notes that he has complied with all the terms of his supervised release and maintains a positive relationship with his probation officer, Myekia Sharpe, who has endorsed his petition for early termination. Id.; see Docket No. 742 (Motion in compliance by U.S. Probation Office).

The government opposes Sánchez's motion. (Docket No. 741.) The government argues that "mere inconvenience of some of the conditions of supervised release should not move [the] Court to

Criminal No. 96-001 [1] (FAB)                                           3

grant Defendant's request." Id. at p. 2. The government points to "the violent and calculated nature of the crimes" in arguing that "there is a heightened need to afford adequate deterrence and protect the public from further crimes by Defendant." Id. at p. 3.

Sánchez has twice previously moved the Court for early termination of supervised release. (Docket No. 694; Docket No. 701.) The Court denied both requests. (Docket No. 698; Docket No. 706.) His current request, notably, is the first to be supported by the U.S. Probation Office.[1]

Under 18 U.S.C. § 3583(e)(1), a court may "terminate a term of supervised release and discharge the defendant at any time after the expiration of one year of supervised release . . . ." The court must be "satisfied that such action is warranted by the conduct of the defendant released and the interest of justice. Id. "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of circumstances when determining whether to grant early termination." United States v.

---

[1] In their brief in response to Sánchez's second motion, the probation office noted that Sánchez had a positive rehabilitation record and was of limited risk to the community. See Docket no. 705 at pp. 2-3. The probation office nonetheless opposed his request because he "[did] not meet the Middle District of Florida's criteria for Early Termination because the instant offense was violent in nature." Id. at p. 3. Although the probation office endorses his current motion, they did not provide a reason for their changed position.

Criminal No. 96-001 [1] (FAB)                                                                  4

Melvin, 978 F.3d 49, 52 (3d Cir. 2020) (internal citation omitted). "[C]ompliance with the terms and conditions of supervised release, though laudable, is generally not grounds for early termination." United States v. Flecha-Maldonado, Crim. No. 01-00615-2 (RAM), 2020 U.S. Dist. LEXIS 94549, at *5 (D.P.R. May 28, 2020) (Arias, C.J.) (quoting United States v. Farmer, No. 1:05-cr-00088-JAW, 2015 U.S. Dist. LEXIS 145925, at *2 (D. Me. 2015)) (alterations omitted). On the other hand, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." Melvin, 978 F.3d at 53. In general, a court's determination of whether a reduction in the term of supervision is warranted is based on weighing the sentencing factors set forth in 18 U.S.C. § 3553(a), excluding section 3553(a)(2)(A). See 18 U.S.C. § 3583(e); United States v. Guzman-Madera, Crim. No. 1:22-cr-10189-IT, 2025 U.S. Dist. LEXIS 75246, at *2 (D. Mass. Apr. 16, 2025). Exclusion of section 3553(a)(2)(A), which requires a sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," highlights that "[s]upervised release fulfills rehabilitative ends." Guzman-Madera, 2025 U.S. Dist. LEXIS 75246, at *2 (citing United States v. Johnson, 529 U.S. 53, 59 (2000)).

Criminal No. 96-001 [1] (FAB)                                             5

The Court finds that early termination of Sánchez's supervised release is not warranted.  The Court commends him for his progress towards rehabilitation and re-integration into the community.  The Court is not convinced, however, that he has demonstrated that a reduction in his term of supervision is warranted in the interest of justice.  His compliance with his release conditions is "merely doing what [he] himself agreed to do and what the law requires he does." United States v. Peters, Crim. No. 18-10449-NMG, 2024 U.S. Dist. LEXIS 189348, at *2 (D. Mass. Oct. 17, 2024).  Although he points to the benefits of being able to apply for his own TWIC card, it is unclear whether the Court's early termination of his supervised release would enable him to qualify for one.  An applicant is ineligible for a TWIC for five years following his or her release from incarceration on a robbery offense, and a reduction in his supervised release term does not appear to shorten the ineligibility period.  See Transp. Sec. Admin., Disqualifying Offenses and Other Factors, https://www.tsa.gov/disqualifying-offenses-factors [https://perma.cc/2LEF-QZG5].  Beyond this, Sánchez does not cite any other reason that would compel the Court to find that a reduction in his term of supervision is in the interest of justice.  Weighed against the presumed appropriateness of his initially prescribed term of supervision, the Court finds that a reduction is not warranted.

Accordingly, Sánchez's motion for early termination of supervised release is **DENIED**.  (Docket No. 737.)

**IT IS SO ORDERED.**

San Juan, Puerto Rico, October 28, 2025.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE